UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEVON LOPEZ,

          Petitioner,

     v.

R. C. JOHNSON, Warden,

          Respondent.

Case No. 21-cv-07599-JST (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by petitioner Joevon[1] Lopez challenging the validity of a judgment obtained against him in state court. Respondent has filed an answer to the petition. ECF No. 10. Petitioner has filed a document entitled, "Supplemental Brief," which the Court construes as his traverse. ECF No. 11. Petitioner also requests an evidentiary hearing. *Id.* at 10. For the reasons set forth below, the Court will deny the petition.

I.    **PROCEDURAL HISTORY**

In 2017, an Alameda County jury convicted petitioner of murder (Cal. Penal Code § 187(a)) and possession of a firearm by a felon (Cal. Penal Code § 29800(a)(1)), and found true an enhancement for personally and intentionally discharging a firearm. Answer, Ex 1, Clerk's Transcript ("CT") 218-219.[2] The jury found not true an enhancement for personally and

---

[1] Petitioner's first name was incorrectly spelled as "Joevan" in the state court proceedings. *See* Answer, Exs. 1-8. Petitioner noted in his petition that the correct spelling is "Joevon." ECF No. 1 at 1.

[2] All exhibit references herein are to the exhibits submitted by respondent in support of the answer, unless otherwise indicated. Page number citations for the parties' filings refer to those assigned by the Court's electronic filing system and are located at the top right-hand corner of each page.

intentionally discharging a firearm causing great bodily injury or death.  *Id.*  On January 12, 2018, the trial court sentenced petitioner to state prison for a total term of forty-five years to life.  CT 279-282.

Petitioner appealed and, on March 24, 2020, the California Court of Appeal affirmed his conviction.  *People v. Lopez*, No. A153590, 2020 WL 1452953 (Cal. Ct. App. Mar. 24, 2020).  The California Supreme Court denied review on July 8, 2020.  Answer, Exs. 7, 8.  Petitioner denies having filed any state habeas petition.  ECF No. 1 at 3.

On September 29, 2021, petitioner filed a habeas petition in this Court.  ECF No. 1.  On May 16, 2022, the Court issued an order to show cause on claims 1, 2, 3, and 6, and found the remaining claims not cognizable.  ECF No. 8.

## II.    STATEMENT OF FACTS

The following background facts are taken from the March 24, 2020 opinion of the California Court of Appeal:[3]

> Around 4:30 p.m. on October 3, 2015, Jasvir Singh was driving his ice cream truck down the 9300 block of Peach Street in Oakland. Paula Freehoffer was sitting on her steps smoking a cigarette and waiting for the ice cream truck to reach her house. Freehoffer saw her neighbor Marty Lopez and his friend, defendant (whom Freehoffer knew as "J") by Marty Lopez's mother's house. The ice cream truck stopped and defendant and Marty Lopez approached it and "got something from the ice cream man. They got either pops or potato chips." According to Freehoffer, defendant and Marty Lopez then "start[ed] shooting." Defendant had what appeared to Freehoffer to be a .9-millimeter handgun. The ice cream truck crashed into another vehicle, and Freehoffer ran to the driver's side door. There was "blood all over" and Singh appeared to be dead.
>
> Several other witnesses heard the gunshots. Guadalupe Vilchis heard gunfire from her living room and looked out her window to see defendant shooting towards the ice cream truck. Vilchis then saw defendant place the gun underneath his t-shirt and walk toward the entrance of her house. Vilchis's husband, Manuel Castaneda, was in

---

[3] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017).  Based on its independent review, the Court finds that it can reasonably conclude that the state appellate court's summary of facts is supported by the record and that this summary is therefore entitled to a presumption of correctness, *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014), unless otherwise indicated in this order.

United States District Court
Northern District of California

the bathroom at the rear of the house and saw defendant carrying something that he appeared to be eating, and then saw him place his hands on the fence at the rear of the house.

Another neighbor, Hector De La Cruz, was inside his home when he heard "around six" gunshots followed by the sound of a vehicle crashing. He then saw defendant walking away from the ice cream truck. Eric Emerson, another neighbor, heard approximately four to five gunshots and saw defendant wipe off a gun before handing it to Marty Lopez.

Police arrived at the scene to find Singh dead, lying on the street with his feet up on the ice cream truck. The truck had crashed into a parked vehicle and had four bullet holes on the passenger's side, with the rear and passenger side window both shattered. In the rear yard of a nearby home on 94th Avenue, police found an open and empty bag of chips and an unmelted, unopened ice cream bar. They also recovered numerous bullet casings and fragments from the scene—including one from Singh's head—later determined to have been fired from two different firearms, one of which was a .9 millimeter caliber. Singh's cause of death was a single gunshot to the center of his forehead.

*Lopez*, 2020 WL 1452953, at *1.

## III.   DISCUSSION

### A.   Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the

1   constitutional error at issue "'had substantial and injurious effect or influence in determining the

2   jury's verdict.'"  *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507

3   U.S. 619, 637 (1993)).

4         A state court decision is "contrary to" clearly established Supreme Court precedent if it

5   "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it

6   "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

7   Court and nevertheless arrives at a result different from [its] precedent."  *Williams*, 529 U.S. at

8   405-06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if

9   the state court identifies the correct governing legal principle from [the Supreme] Court's

10  decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.

11  "[A] federal habeas court may not issue the writ simply because that court concludes in its

12  independent judgment that the relevant state-court decision applied clearly established federal law

13  erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

14        "Factual determinations by state courts are presumed correct absent clear and convincing

15  evidence to the contrary."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  This presumption is

16  not altered by the fact that the finding was made by a state court of appeals, rather than by a state

17  trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087

18  (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and

19  convincing evidence to overcome section 2254(e)(1)'s presumption of correctness; conclusory

20  assertions will not do.  *Id.*  Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual

21  determination will not be overturned on factual grounds unless objectively unreasonable in light of

22  the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340; *see also Torres

23  v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

24        Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's

25  jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the

26  United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions

27  as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  "A federal court

28  may not overrule a state court for simply holding a view different from its own, when the

4

precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

In applying the above standards on habeas review, the Courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *See Wilson v. Sellers,* __ U.S. __, 138 S. Ct. 1188, 1192 (2018); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Thus, a federal court will "look through" the unexplained orders of the state courts rejecting a petitioner's claims and analyze whether the last reasoned opinion of the state court unreasonably applied Supreme Court precedent. *See Ylst*, 501 U.S. at 804-06; *LaJoie*, 217 F.3d at 669 n.7. The California Court of Appeal was the highest state court to have reviewed petitioner's claims in a reasoned decision, and it is the state appellate court's decision that this Court reviews here. *See Ylst*, 501 U.S. at 803-04; *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

## B. Petitioner's Claims

The Court found that petitioner asserted the following cognizable grounds for federal habeas relief: instructional error for failing to instruct on aiding and abetting (claim 1); insufficiency of the evidence to support his first degree murder conviction based on premeditation and deliberation (claim 2)[4]; insufficiency of the evidence to support his first degree murder conviction based on felony murder (claim 3); evidentiary error in admitting evidence obtained through a cellphone extraction without establishing the proper foundation (claim 6a); and ineffective assistance of counsel ("IAC") for failing to object to the admission of the evidence

---

[4] In its Order to Show Cause, the Court included a cognizable claim of "double jeopardy." *See* ECF No. 8 at 2; ECF No. 1 at 5. Petitioner argued in his petition that as a result of the alleged insufficient evidence of premeditation and deliberation, "principles of double jeopardy preclude retrial on first degree murder charges." ECF No. 1 at 5. Also, on direct appeal, he argued that his first degree murder conviction should be reversed, and he should be retried only on second degree murder charges. *See* Answer, Ex. 3 at 49. Because petitioner's double jeopardy argument addressed the *remedy* for the alleged error and not a constitutional violation, this Court now finds that petitioner did not allege a double jeopardy claim. In any case, the state appellate court found no error, and respondent chose not to address the double jeopardy argument for the same reasons stated above, *see* ECF No. 10-1 at 11 fn. 3.

obtained through the cellphone extraction (claim 6b).  *See* ECF No. 8 at 2.  The Court addresses

these claims in turn.

### 1.     Instructional Error for Failing to Instruct on Aiding and Abetting (Claim 1)

In claim 1, petitioner claims the trial court violated due process by failing to instruct sua

sponte on aiding and abetting.  ECF No. 1 at 5.  He adds that "by failing to instruct on aiding and

abetting[,] jurors did not have a valid legal theory of derivative liability on which to find appellant

guilty of 1st degree malice murder . . . ."  *Id.*

### a.     State Court Opinion

The state appellate court summarized this claim and denied it on the merits as follows:

> Defendant argues that because the jury found not true the allegation
> that he personally and intentionally discharged a firearm causing great
> bodily injury or death—and thus, he argues, must have concluded that
> he did not personally fire the fatal shot—any liability for first degree
> murder under a theory of premeditation and deliberation must have
> been based on aiding and abetting. However, defendant did not
> request, and the trial court did not provide, jury instructions on aiding
> and abetting. Therefore, he argues that his conviction is based on a
> legally invalid theory, and must be reversed: "Without any
> instructions on aiding and abetting, jurors found [defendant] guilty of
> first degree premeditated murder without finding he harbored the
> necessary mens rea."

> Defendant acknowledges that where one of several theories of guilt
> presented to the jury is *factually* insufficient, the verdict will be upheld
> if there is sufficient evidence as to at least one of the theories on which
> the jury is instructed, "absent an affirmative indication in the record
> that the verdict actually did rest on the inadequate ground." (*People v.
> Guiton*, *supra*, 4 Cal.4th at p. 1129.) But where one of several theories
> is legally insufficient, reversal is required unless the record
> affirmatively demonstrates that the jury relied on a legally sufficient
> theory. (*People v. Guiton*, *supra*, 4 Cal.4th at pp. 1121-1122; *People
> v. Morgan* (2007) 42 Cal.4th 593, 609-612.)

> First, defendant's argument fails because the fact that the jury made a
> factual finding inconsistent with the prosecution's theory of
> premeditated murder does not make that theory legally invalid. (See
> *People v. Guiton*, *supra*, 4 Cal.4th at pp. 1122, 1125 [legally invalid
> means "infected by prejudicial error such as inadmissible evidence or
> incorrect instructions," i.e., a "'mistake about the law, as opposed to a

6

mistake concerning the weight or the factual import of the evidence'"].) The theory of premeditated murder as presented to the jury, including the jury instructions, was legally valid—and defendant does not argue otherwise. Accordingly, the rule that reversal is required unless the record affirmatively demonstrates that the jury relied on a legally sufficient theory does not apply.

Second, defendant's argument fails because we do not consider the jury's finding on the enhancement in evaluating whether their verdict on the murder count must be reversed. In part, section 954 provides: "An acquittal of one or more counts shall not be deemed an acquittal of any other count." And as we have just discussed, substantial evidence supports the first degree murder verdict under a felony-murder theory. Thus, reversal is not required, notwithstanding the jury's not true finding on the gun use enhancement. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 407 ["Under section 954, the jury's 'not true' finding on the personal firearm use enhancements may be logically inconsistent with a finding that defendant was the direct perpetrator of the charged offenses, but, by statute, the inconsistency is not grounds for reversal because substantial evidence supported the verdict"]; *People v. Thompson* (2010) 49 Cal.4th 79, 120 [rejecting argument that first degree murder verdict must be reversed where aiding and abetting evidence was allegedly insufficient and jury found not true a personal gun use allegation because "[t]he jury's finding on the gun use allegation does not necessarily demonstrate it based its murder verdict on an aider and abettor theory"].)

*Lopez*, 2020 WL 1452953, at *6 (brackets, footnotes, and emphasis in original).

### b.   Applicable Federal Law

A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceedings. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.*

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "especially heavy" burden, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. at 155.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.    Analysis

Here, as the state appellate court found, there was no legally invalid theory presented to the jury.  *Lopez*, 2020 WL 1452953, at *6.  Further, the state appellate court found that there was sufficient evidence to support a first degree murder conviction based on a felony-murder theory.  *See id*.  The state appellate court thus found that reversal was not required and rejected petitioner's instructional error claim.  *See id.*

The United States Supreme Court has made clear that inconsistent verdicts may stand when one of the verdicts is a conviction and the other an acquittal.  *Ferrizz v. Giurbino*, 432 F.3d 990, 992 (9th Cir. 2005) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932)).  The rationale for this rule is that the acquittal may be an exercise of leniency by the jury not necessarily grounded in its view of the evidence.  *Id.* at 993.  *See also Ford v. Peery*, 999 F.3d 1214, 1226 (9th Cir. 2021) (apparent inconsistency between jury's guilty verdict on murder charge and its inability to decide on firearm enhancements not reasons to set aside guilty verdict), *reh'g en banc denied*, 9 F.4th 1086 (9th Cir. 2021).  Accordingly, in the instant case, as the state appellate court found, "[a]n acquittal of one or more counts shall not be deemed an acquittal of any other count."  *Lopez*, 2020 WL 1452953, at *6.  In other words, the jury's potentially inconsistent verdicts resulting from the not true finding on one of the enhancements had no effect on the validity of the first degree murder conviction.  *See id.*

Under these circumstances, petitioner has not shown that the absence of a jury instruction on aiding and abetting resulted in a violation of due process.  The state appellate court's conclusion was not so lacking in justification that it was beyond any possibility for fairminded disagreement.  Furthermore, given that the Court finds below that the record shows sufficient evidence existed to support a first degree murder conviction based on felony murder, *see infra* Part III.B.2.b.(1).ii, petitioner cannot show that the absence of an aiding and abetting instruction had a substantial or injurious effect on the verdict.  *See Brecht*, 507 U.S. at 637.

In sum, the state appellate court's decision rejecting this instructional error claim was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C.

§ 2254(d).  Habeas relief is denied on claim 1.

### 2.    Insufficiency of Evidence Claims

Petitioner argues in claims 2 and 3 that: (1) there is insufficient evidence to support his first degree murder conviction based on premeditation and deliberation; and (2) there is insufficient evidence of attempted robbery so as to support the felony-murder theory.  ECF No. 1 at 5.  Because the state appellate court considered claim 3 first, this Court will switch the two claims and also consider claim 3 first.  *See Lopez*, 2020 WL 1452953, at *2-5.

### a.    Applicable Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *see id.* at 324.

The Supreme Court has emphasized that "*Jackson* claims face a high bar in federal habeas proceedings."  *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, has there been a due process violation.  *Jackson*, 443 U.S. at 324.  The "prosecution need not affirmatively 'rule out every hypothesis except that of guilt,'" and the reviewing federal court "'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in

favor of the prosecution, and must defer to that resolution.'"  *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326).

On habeas review, a federal court evaluating the evidence under *Jackson* and *Winship* should take into consideration all of the evidence presented at trial.  *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326; *see also McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (finding Ninth Circuit erred by failing to consider all of the evidence in light most favorable to the prosecution when it resolved inconsistencies in testimony in favor of petitioner).  A jury's credibility determinations are therefore entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations.  *See id.* (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); *see also People v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

Under 28 U.S.C. § 2254(d), a federal habeas court applies *Jackson* and *Winship* with an additional layer of deference.  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  A federal habeas court must ask whether the operative state court decision "reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts of this case."  *Id.* at 1275 (citing 28 U.S.C. § 2254(d)(1)).  Thus, if the state court affirms a conviction under *Jackson*, the federal court must apply section 2254(d)(1) and decide whether the state court's application of *Jackson* was objectively unreasonable.  *See McDaniel*, 558 U.S. at 132-33.  The *Jackson* standard is applied to a crime as that crime is defined by state law.  *Jackson*, 443 U.S. at 324 n.16.  To grant relief, therefore, a federal habeas court must conclude that "the state court's determination that a rational

jury could have found that there was sufficient evidence of guilt, i.e., that each required element was proven beyond a reasonable doubt, was objectively unreasonable." *Boyer v. Belleque*, 659 F.3d 957, 964-965 (9th Cir. 2011).

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  Mere suspicion or speculation cannot support logical inferences, however. *Id. Compare United States v. Begay*, 673 F.3d 1038 1043-45 (9th Cir. 2011) (en banc) (evidence about defendant's activities and manner of killing allowed inference of premeditation and is sufficient "because it is 'supported by a chain of logic,' which is all that is required to distinguish reasonable inference from speculation") *with Juan H.*, 408 F.3d at 1278-79 (granting writ where, after resolving all conflicting factual inferences in favor of prosecution, only speculation supported petitioner's conviction for first degree murder under a theory of aiding and abetting).  "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts." *Coleman*, 566 U.S. at 655.

In sum, sufficiency claims on federal habeas review are subject to a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).  Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)).

### b.    Murder Defined By State Law

As mentioned above, on federal habeas review a sufficiency of the evidence claim is performed with reference to the substantive elements of the criminal offense as defined by state law.  *See Jackson*, 443 U.S. at 324 n.16.

Under California law, murder is the unlawful killing of a human being with malice aforethought.  Cal. Penal Code § 187(a).  "All murder that is perpetrated by . . . willful, deliberate

11

and premeditated killing . . . or that is committed in the perpetration of" certain specified felonies,

including robbery, "is murder of the first degree."  *Id.* at § 189(a).

California courts have described felony murder and premeditated first degree murder as

follows:

> "Felony murder and premeditated murder are not distinct crimes, and need not be separately pleaded."  *People v. Nakahara* (2003) 30 Cal.4th 705, 712, 134 Cal.Rptr.2d 223, 68 P.3d 1190.) Thus, "jurors need not unanimously agree on a theory of first degree murder as either felony murder or murder with premeditation and deliberation" in order to convict a defendant of that crime. (*Ibid.*)

> Premeditated murder and felony murder do, however, "'have different elements even though there is but a single statutory offense of murder.'" (People v. Benavides (2005) 35 Cal.4th 69, 101, 24 Cal.Rptr.3d 507, 105 P.3d 1099.) ""In the context of first degree murder, '"premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."'" (*People v. Lee* (2011) 51 Cal.4th 620, 636, 122 Cal.Rptr.3d 117, 248 P.3d 651 (*Lee*).) The required mind state "is uniquely subjective and personal. It requires more than a showing of intent to kill; the killer must act deliberately, carefully weighing the considerations for and against a choice to kill before he or she completes the acts that caused the death." (*People v. Chiu* (2014) 59 Cal.4th 155, 166, 172 Cal.Rptr.3d 438, 325 P.3d 972.) "[T]he reflection necessary to establish premeditation and deliberation is not measured by duration of time: 'Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly, but the express requirement for a concurrence of deliberation and premeditation excludes from murder of the first degree those homicides . . . which are the result of mere unconsidered or rash impulse hastily executed.'" (*People v. Wright* (1985) 39 Cal.3d 576, 593, 217 Cal.Rptr. 212, 703 P.2d 1106.)

> In contrast, "[t]he felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state" vis-à-vis an intent to kill. (*People v. Chun* (2009) 45 Cal.4th 1172, 1182, 91 Cal.Rptr.3d 106, 203 P.3d 425.) "For conviction, the prosecution must establish that the defendant, either before or during the commission of the acts that caused the victim's death, had the specific intent to commit one of the listed felonies." (*People v. Lewis* (2001) 25 Cal.4th 610, 642, 106 Cal.Rptr.2d 629, 22 P.3d 392.)

> Generally speaking, "[w]hen a jury is instructed on two theories of first degree murder, a first degree murder verdict will be upheld [even] if there is insufficient evidence as to one of the theories." (*People v. Sandoval* (2015) 62 Cal.4th 394, 424, 196 Cal.Rptr.3d 424, 363 P.3d 41.) In such cases, where "the inadequacy of proof" as to one of the theories of first degree murder is "purely factual," it is presumed that the jury is "fully equipped to detect" the deficiency and

United States District Court
Northern District of California

must have relied on the other, factually valid theory. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129, 17 Cal.Rptr.2d 365, 847 P.2d 45.)

But this presumption does not apply if there is "an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*People v. Guiton*, *supra*, 4 Cal.4th at p. 1129, 17 Cal.Rptr.2d 365, 847 P.2d 45.)

*People v. Wear*, 44 Cal. App. 5th 1007, 1020-21 (2020).

### 1) Insufficiency of Evidence as to First Degree Murder Conviction Based on Felony Murder (Claim 3)

In claim 3, petitioner contends there was insufficient evidence of felony murder to support his first degree murder conviction, specifically because there was insufficient evidence of robbery or attempted robbery.  ECF No. 1 at 5.

### i.   State Court Opinion

The state appellate court denied this claim on the merits as follows:

Defendant argues that there was insufficient evidence to convict him of first degree murder under a theory of felony murder because there was insufficient evidence of a robbery or attempted robbery.

The felony murder instructions told the jury that the prosecution was required to show: "1. The defendant committed robbery or attempted robbery; 2. The defendant intended to commit robbery or attempted robbery; 3. If the defendant did not personally commit robbery or attempted robbery, then a perpetrator, committed robbery or attempted robbery; AND 4. While committing robbery or attempted robbery, the defendant or perpetrator caused the death of another person."

"Robbery is 'the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property.' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 343; see § 211.) "An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission. [Citations.]" (*People v. Medina* (2007) 41 Cal.4th 685, 694.) The direct but ineffectual act must go beyond mere preparation, but need not be an actual element of the crime. (*Ibid.*) Thus, neither force nor fear is an element of attempted robbery. (*People v. Vizcarra* (1980) 110 Cal.App.3d 858, 863.)

"On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Koontz* (2002) 27 Cal.4th 1041, 1078.) We "must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in

support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432.)

Defendant argues that the evidence does not support a finding that he had the specific intent to rob Singh, that he took an immediate step toward committing a robbery, or that he killed Singh during an attempt to perpetrate a robbery. We disagree.

As noted, Paula Freehoffer was the only witness who testified regarding the events that took place just before the shooting. In particular, her testimony on direct examination was as follows:

"MR. WILSON [prosecutor]: Q. You know that the ice cream man stopped. And does someone approach him?

"A. Yes.

"Q. Who was that?

"A. Marty and 'J.'

"Q. And what happens next?

"A. They got something from the ice cream man. They got either pops or potato chips.

"Q. Where are you at this point?

"A. I'm on the step.

"Q. And where's the little boy, do you remember?

"A. He's still pedaling. He's about at the stop sign, almost to the stop sign, because I'm one—the second house in, so he might be at the—at the stop sign probably by that time. And that's when the shots go off.

"Q. So do they get something from the ice cream man?

"A. Yes, they already got it.

"Q. And do they pay the ice cream man?

"A. Well, I didn't see them pay for anything.

"Q. What do you see?

"A. I just see them get the soda pops and the chips.

"Q. And what happens next?

"A. And then they start shooting."[FN 4]

[FN 4:] Defendant points out certain inconsistencies in Freehoffer's

14

testimony and observes that the prosecutor characterized her as "all over the place" and "angry." However, it was for the jury to evaluate Freehoffer's credibility and to weigh her testimony accordingly. (See *People v. White* (2014) 230 Cal.App.4th 305, 319, fn. 14.)

Viewed as a whole, then, the evidence establishes the following. When the ice cream truck stopped, defendant and Marty Lopez approached it together, each with a concealed and loaded weapon. They received items from Singh—soda pop, chips, and/or an ice cream bar—then drew their weapons. Singh began to drive away, and defendant and Marty Lopez both fired at the passenger side of the ice cream truck, killing Singh and causing him to crash into a nearby parked car. Defendant then fled, evidently dropping an ice cream bar and bag of chips as he did so. While certainly not overwhelming, viewing all this circumstantial evidence in the light most favorable to the judgment, we conclude that it permits the jury to draw the inference that defendant approached the ice cream truck with the specific intent to rob Singh. (See *People v. Johnson* (1972) 28 Cal.App.3d 653, 657 ["The intent to commit a particular crime is generally manifested by the circumstances connected with the offense [citation] and the specific intent to rob may be inferred from the circumstances connected with the robbery"].)

And the jury could clearly further conclude that the defendant committed an act beyond mere preparation—either drawing his firearm or shooting at the truck as Singh attempted to get away—toward the commission of the robbery. (See *People v. Vizcarra*, *supra*, 110 Cal.App.3d at p. 862 [approaching liquor store with a rifle and attempting to hide when observed by a customer is sufficient direct act toward the accomplishment of robbery].)

Defendant makes much of Freehoffer's testimony that she did not see him or Marty Lopez pay for the items they received from Singh, arguing that this testimony does not support any inference that they did not do so. But whether they paid for the items—or even whether they received any property at all—is not determinative, because attempted robbery does not require any of the elements of robbery. (See *People v. Vizcarra*, *supra*, 110 Cal.App.3d at p. 863.) Instead, as discussed, the evidence as a whole permits the inference that the defendant had the specific intent to rob Singh and committed an act beyond preparation toward the commission of a robbery. Substantial evidence supports the jury's first degree murder verdict on a theory of felony murder.

*Lopez*, 2020 WL 1452953, at *2-4 (footnote in original, brackets added).

### ii.    Analysis

In arguing this sufficiency of the evidence claim as to felony murder on direct appeal, petitioner argues that the evidence does not support a finding that he had the specific intent to rob Singh, that he took an immediate step toward committing a robbery, or that he killed Singh during an attempt to perpetrate a robbery. *Lopez*, 2020 WL 1452953, at *3. The state appellate court

15

1    disagreed and explained that the specific intent to commit a robbery may be demonstrated by the

2    circumstances connected with the offense.  *See id.* at *3-4.

3         The state appellate court reasonably applied *Jackson* when it determined that based on the

4    evidence presented (mainly from the only witness who testified regarding the events that took

5    place just before the shooting) that "viewing all this circumstantial evidence in the light most

6    favorable to the judgment, we conclude that it permits the jury to draw the inference that

7    defendant approached the ice cream truck with the specific intent to rob Singh." *Id.* at *3; *see also*

8    *Maass*, 45 F.3d at 1358.  Specifically, the state appellate court found that the circumstances in this

9    case showed that petitioner and Lopez approached the ice cream truck together, while each was

10   carrying a concealed and loaded weapon.  *Lopez*, 2020 WL 1452953, at *3.  After they received

11   soda pop, chips and/or ice cream from Singh, they drew their weapons.  *Id.*  When Singh then

12   drove away, they both fired at the passenger side of the ice cream truck, killing Singh, and causing

13   him to crash into a nearby parked car.  *Id.* *Lopez*, 2020 WL 1452953, at *3.  Thus, sufficient

14   evidence exists under the deferential *Jackson* standard, where the evidence is viewed in the light

15   most favorable to the prosecution, to support the conclusion that any rational trier of fact could

16   have found beyond a reasonable doubt that petitioner approached the ice cream truck with the

17   specific intent to rob Singh, in the absence of any evidence suggesting that petitioner killed Singh

18   for some other reason.  *See Jackson*, 443 U.S. at 319.  Accordingly, the state appellate court's

19   determination that there was sufficient evidence to support first degree murder based on felony

20   murder was not objectively unreasonable.  Habeas relief is DENIED on claim 3.

21                    **2)  Insufficiency of Evidence as to First Degree Murder**
                         **Conviction Based on Premeditation and Deliberation**
22                       **(Claim 2)**

23        In claim 2, petitioner contends there was insufficient evidence to support his first degree

24   murder conviction based on premeditation and deliberation.  ECF No. 1 at 5.  On direct appeal,

25   petitioner argued that his first degree murder conviction should be reversed and retried only on

26   second degree murder charges.  Answer, Ex. 3 at 49.

27                              **i.    State Court Opinion**

28        The state appellate court summarized and rejected this claim as follows:

United States District Court
Northern District of California

Defendant argues at length that there was insufficient evidence of the prosecution's other theory of first degree murder—that he premeditated and deliberated before killing Singh.

However, because we have concluded that substantial evidence supports the felony-murder theory of first degree murder, we need not address whether the evidence is sufficient to support a finding of premeditation unless there is an "affirmative indication" in the record that the jury based its verdict on a finding of premeditation: "A first degree murder verdict will be upheld if there is sufficient evidence as to at least one of the theories on which the jury is instructed, 'absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground.' (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)" (*People v. Nelson* (2016) 1 Cal.5th 513, 552.) At oral argument, counsel for defendant argued that the jury's questions during deliberations provided such an affirmative indication.

In particular, during the afternoon of the second day of its deliberations, the jury submitted three questions, each on a separate form. The first asked "Can we have someone explain in more detail the difference between, first degree murder, second degree murder and felony murder-first degree?" The second asked "Can someone explain in further detail 'Premeditation'?" And the third asked "What does it take to agree on First Degree Murder—what <u>conditions</u> are necessary?"

The trial court brought the jury back into the courtroom and answered all three questions at the same time. To do so, the trial court reread the jury the first two paragraphs of Instruction No. 521 ("First Degree Murder"); all of Instruction No. 540A ("Felony Murder—Defendant Allegedly Committed Fatal Act") and Instruction No. 540B ("Felony Murder—Coparticipant Allegedly Committed Fatal Act"). The trial court then continued:

"That being said, ladies and gentlemen, all other—if you decide murder—if they do not fit within section 521—or first degree murder, then all murder is second-degree murder as a matter of law. And thirdly, as relates to your question, under section 548, the Defendant has been prosecuted for murder under two theories. It's malice aforethought, which is 521, that I explained to you as first degree murder, and felony murder, which is 540(a) and 540(b).

"Each of the theories of murder has different requirements. And you've seen that in those instructions. However, you may not find the Defendant guilty of murder unless all of you degree [*sic*] that the People have proved the Defendant committed murder under at least one of these theories. You do not all have to agree on the same theory, whether or not it's premeditated or felony murder. If you all agree that there's murder, and half of you agree it's felony murder in the first degree having to do with malice aforethought murder, but you all agree it's murder, then it's murder in the first degree, ok?

"That's what I can give you, ladies and gentlemen. And otherwise, the instructions speak for themselves. If you have other questions, let me know. But I'll now excuse you to go to the jury room, and you can

United States District Court
Northern District of California

continue your deliberations.

"THE FOREPERSON: Can you explain premeditation?

"THE COURT: Premeditation, ladies and gentlemen, is set forth in the instructions, as I indicated to you, in 521. It tells you—Paragraph 1: The Defendant acted with premeditation if he decided to kill before completing the act that caused death. And the subsequent paragraph, in 521, it tells you about the time, okay?

"THE FOREPERSON: Okay.

"THE COURT: All right."

The jury then resumed deliberating, and later that afternoon, reached its verdict.

At oral argument, counsel for defendant argued that the jury's questions indicate reversal is required under *People v. Wear* (2020) 44 Cal.App.5th 1007 (*Wear*). In *Wear*, the defendant was charged with first degree murder under both a theory of premeditated murder and felony murder committed during a robbery, and with a robbery special circumstance. (*Id.* at p. 1018.) During deliberations, the jury sent a note to the trial court that stated: "'The jurors are split over (1) malice aforethought [and] (2) felony murder. Some agree that (1) has been proven but not (2). [¶] Some believe (2) has been proven but not (1). [¶] Our understanding is that if all jurors agree to one or the other, this is sufficient to find the defendant guilty [of] the crime of murder in [the] first degree.'" (*Id.* at p. 1021.) The court sent a response confirming that the jurors "'[did] not all need to agree on the same theory'" to convict Wear of first degree murder. (*Ibid.*)

The following day, the jury informed the trial court that it was split on the robbery special circumstance, by a vote of ten to two. The court ultimately declared a mistrial on the special circumstance based on this impasse, which "further confirmed that not all the jurors were convinced the shootings happened in the course of a robbery." (*Wear*, at p. 1021.) The jury ultimately convicted the defendant of first degree murder. (*Id.* at p. 1018.)

Because the *Wear* court concluded that insufficient evidence supported the prosecution's theory of premeditation, and because the jury's question, vote information, and impasse on the special circumstance provided an "affirmative indication" in the record that "some of the jurors believed Wear was guilty under the felony-murder theory, while others believed he was guilty under the premeditated-murder theory," the court reversed. (*Wear*, at p. 1018.)

We find *Wear* distinguishable, and do not believe the record in this case contains an "affirmative indication" that the jury based its verdict on the prosecution's theory of premeditated murder. As noted, in *Wear*, the jury directly stated that some jurors thought felony murder had been proven but not premeditation, and vice versa, and their ten to two vote on the robbery special circumstance "further confirmed that not all the jurors were convinced the shootings happened in the course of a robbery." (*Wear*, at p. 1021.) Here, by contrast, the jury's

1

2

3

4

5

6

> questions concerned the general definitions of first degree, second degree, and felony murder, and the jury never indicated that some jurors accepted one theory of first degree murder but not the other. And there was no robbery special circumstance alleged. Although the jury's third question might be read to suggest they were having trouble agreeing on a theory of first degree murder, this question in and of itself does not rise to the level of an "affirmative indication" that some jurors ultimately based their first degree murder verdicts on a theory of premeditation to the exclusion of the felony-murder theory. (*People v. Guiton*, *supra*, 4 Cal.4th at p. 1129.) Accordingly, we need not reach defendant's arguments regarding the sufficiency of the evidence of premeditation and deliberation.

7    *Lopez*, 2020 WL 1452953, at *4-5 (brackets and emphasis in original).

8                                          **ii.    Analysis**

9          Here, it was not an unreasonable application of clearly established federal law for the state

10   appellate court to conclude that the evidence was sufficient to support the felony-murder theory of

11   first degree murder.  *See Lopez*, 2020 WL 1452953, at *4.  The state appellate court noted that it

12   need not address whether the evidence was sufficient to support a finding of premeditation unless

13   there was an "affirmative indication" in the record that the jury based its verdict on a finding of

14   premeditation.  *Id.*  Thus, it follows that it was reasonable for the state appellate court to find that,

15   because there was sufficient evidence of felony murder, it did not have to address whether there

16   was sufficient evidence of the alternative theory of premeditation and deliberation. *See Griffin v.*

17   *United States*, 502 U.S. 46, 59-60 (1991) (upholding conviction where jury rendered general

18   verdict and evidence was sufficient on one theory of liability, even if it was insufficient as to

19   alternative theory); *United States v. Lynn*, 2011 U.S. App. LEXIS 11254, *20 n.10 (9th Cir. 2011)

20   (because the court concluded that there was sufficient evidence to support interstate commerce

21   element of distribution of child pornography, it had no need to address alternate theories of

22   liability for that element); *United States v. Dain*, 258 Fed. App'x 90, 93 (9th Cir. 2007) (rejecting

23   sufficiency of evidence claim where evidence was sufficient on at least one theory of liability).

24         It was also reasonable for the state appellate court to conclude, based on the record before

25   it, that there was no "affirmative indication" that the jury relied on premeditation instead of felony

26   murder.  *See Lopez*, 2020 WL 1452953, at *5.  As the state appellate court noted, counsel for

27   petition on direct appeal had relied on *People v. Wear*, 44 Cal. App. 5th 1007 (2020), when

28   arguing that the jury's questions indicated that reversal was required.  *Id.*  The *Wear* court reversed

United States District Court
Northern District of California

1    Wear's conviction upon finding that the juror note stating some jurors believed  Wear was guilty

2    on invalid theory "affirmatively demonstrate[d]" that some jurors convicted Wear on an invalid

3    theory.  *Wear*, 44 Cal. App. 5th at 1021.  However, in the instant case, the state appellate court

4    found that *Wear* was distinguishable because it "d[id] not believe the record in this case

5    contain[ed] an 'affirmative indication' that the jury based its verdict on the prosecution's theory of

6    premeditated murder."  *See Lopez*, 2020 WL 1452953, at *5.  While in *Wear*, the jury directly

7    stated that some jurors thought felony murder had been proven but not premeditation, *see* Wear,

8    44 Cal. App. 5th at 1021, the jury's questions at petitioner's trial "concerned the general

9    definitions of first degree, second degree, and felony murder, and the jury never indicated that

10   some jurors accepted one theory of first degree murder but not the other," *see Lopez*, 2020 WL

11   1452953, at *5.  The state appellate court reasonably found that "[a]lthough the jury's third

12   question might be read to suggest they were having trouble agreeing on a theory of first degree

13   murder, this question in and of itself does not rise to the level of an "affirmative indication" that

14   some jurors ultimately based their first degree murder verdicts on a theory of premeditation to the

15   exclusion of the felony-murder theory."  *Id.* (citing *People v. Guiton*, 4 Cal.4th 1116, 1129

16   (1993)).  The state appellate court then reasonably concluded that it "need not reach defendant's

17   arguments regarding the sufficiency of the evidence of premeditation and deliberation."  *Id.*

18        In conclusion, mindful of the "sharply limited nature of constitutional sufficiency review"

19   and applying the "additional layer of deference" required by AEDPA, this Court is unable to find

20   that the state appellate court's rejection of this claim was objectively unreasonable.  *Juan H.*, 408

21   F.3d at 1274-75; *see also Jackson*, 443 U.S. at 319, 326.  Accordingly, the Court denies

22   petitioner's sufficiency of the evidence claim as to the first degree murder conviction based on

23   premeditation and deliberation.  Habeas relief is denied on claim 2.

24            **3.        Claims Relating to Admission of Cell Phone Data (Claim 6)**

25        In claim 6, petitioner contends he was denied due process because the trial court admitted

26   time-stamped photographs obtained through a cellphone extraction, which he argues was improper

27   because the evidence constituted hearsay and lacked a proper foundation.  ECF No. 1 at 6.  He

28   also contends trial counsel was ineffective for failing to object to this evidence.  *Id.*

United States District Court
Northern District of California

20

a.    **Admission of Cell Phone Data Did Not Amount To Violation Of Due Process (Claim 6a)**

### 1)  State Court Opinion

The state court rejected this claim as follows:

> As part of the prosecution's case, Oakland police Detective Phong Tran testified that Antoinette Wilson, who testified at trial that she was present at the scene around the time of the incident, consented to search of her cell phone. Detective Tran connected a cord to Wilson's phone and used a program called "Cellebrite" to extract various data from the phone, including some 28 photographic images, which were subsequently entered into evidence as the People's Exhibit 4 without objection from defense counsel.[FN 6] One such photograph depicted defendant in a hooded sweatshirt at the scene approximately eight minutes before the incident. The photographs also included information, obtained from Wilson's cell phone, about the time and location at which they were taken. Detective Tran testified that this time stamp information would be based on the time setting on Wilson's phone, and that he had checked the time on Wilson's phone and found it to be correct.

> [FN 6:] Again, defense counsel's failure to object has waived this issue on appeal. However, because defendant argues in the alternative this his counsel was ineffective in failing to make such an objection, we will reach the merits.

> Defendant argues that these images and their associated information were hearsay and therefore inadmissible. In *People v. Goldsmith* (2014) 59 Cal.4th 258, 269 (*Goldsmith*), our Supreme Court considered and rejected this argument with respect to images captured by traffic cameras at red lights and automatically imprinted with date, time, and location information, concluding that "[b]ecause the computer controlling the ATES[5] digital camera automatically generates and imprints data information on the photographic image, there is similarly no statement being made by a person regarding the data information so recorded. Simply put, '[t]he Evidence Code does not contemplate that a machine can make a statement.' [Citations.]" (*Id.* at p. 274.)

> Defendant acknowledges *Goldsmith*, but argues that it does not control this case because the information from Wilson's cellphone "can be manipulated and altered" and "[t]here is human interaction and an opportunity for human error during the Cellebrite extraction process." The record does not support this argument.

> Detective Tran testified that when a photo is taken, the phone stamps that photo with the data, including "the file name, device, and the storage, the Apple phone file it was kept under, the size, and the time when this thing was downloaded." Other than changing the time setting on the phone, Detective Tran did not testify that there was any way to alter or manipulate this information, which was apparently

---

[5] ATES stands for automated traffic enforcement system.

United States District Court
Northern District of California

automatically generated. And Detective Tran testified similarly that the photos were extracted from Wilson's phone after he "physically connect[ed] the cord to the phone," with no other input or involvement from him or any other person. Defendant's argument that the photos were hearsay because their accompanying data was somehow altered or manipulated is not supported by the record. Accordingly, the photos were not hearsay and there was no error in admitting them. (See *Goldsmith*, *supra*, 59 Cal.4th at pp. 273-275.)

*Lopez*, 2020 WL 1452953, at *8-9 (footnote 5 and brackets in [FN 6] added; footnote 6 and other brackets in original).

### 2)   Analysis Relating to Procedural Default

As an initial matter, this due process claim is procedurally defaulted.  The state appellate court found that this claim was forfeited because defense counsel did not object to the trial court's admission of the time-stamped photographs obtained through a cellphone extraction.  *Lopez*, 2020 WL 1452953, at *8 fn. 6.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.  *See id.* at 750. The rule cited here by the state appellate court, specifically, that a defendant must make a contemporaneous objection at trial in order to preserve an issue on appeal, has been found to be a sufficiently independent and adequate procedural rule to support the denial of a federal petition on grounds of procedural default.  *See Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (finding claim procedurally defaulted based on failure to request clarification in jury instruction under California's contemporaneous objection rules).  The Court therefore cannot reach this claim.[6]

---

[6] In cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750. Petitioner here has made no such showing, but this issue need not further be addressed because the state appellate court considered this claim on the merits, as explained below.

United States District Court
Northern District of California

### 3) Analysis Relating to Due Process Claim

Although the state appellate court found that the due process claim was procedurally waived, it also found that the claim failed on the merits.

As mentioned above, petitioner challenges that trial court's admission of time-stamped photographs obtained through a cellphone extraction, which he argues was improper because the evidence constituted hearsay and lacked a proper foundation.  ECF No. 1 at 6.

On federal habeas review of a due process claim, the question is whether the admission of the challenged evidence was so prejudicial in the context of the trial as to render the conviction unfair.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision."  *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).  "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (emphasis in original).

Here, the state appellate court found that the data extracted from Wilson's phone was not hearsay, because "[t]he Evidence Code does not contemplate that a machine can make a statement."  *Lopez*, 2020 WL 1452953, at *9 (citation omitted); *see People v. Edwards*, 57 Cal. 4th 658, 773 (2013) (photographs are not hearsay).  The question whether the evidence was properly admitted under state evidentiary rules is a question of state law that cannot be revisited by this Court.  *See Estelle*, 502 U.S. at 67; *Larson v. Palmateer*, 515 F.3d 1057, 1065 (9th Cir. 2008) ("The correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review"); *see also Jammal*, 926 F.2d at 919-20 ("failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief. . . .  The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point.").[7]

---

[7] While this is a question of state evidentiary law, the Court notes that the Ninth Circuit has interpreted the Federal Rules of Evidence in the same manner.  *See United States v. Lazarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) (machine statements are not hearsay); *United States v. Gonzales*, 615 Fed. App'x 405 (9th Cir. 2015) (cell phone tracking information report is not hearsay because it was automatically computer-generated without human input or review); *United States v. May*, 622 F.2d 1000, 1007 (9th Cir. 1980) (photograph is not hearsay because it is not an assertion, oral, written, or nonverbal, as required by Federal Rule Evidence 801(a)).

Rather, on federal habeas review, the question is whether the admission of the challenged evidence was so prejudicial in the context of the trial as to render the conviction unfair. *Estelle*, 502 U.S. at 67. The Supreme Court has not clearly delineated when the admission of allegedly inadmissible evidence rises to the level of a due process violation, *see Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), which allows state courts broad leeway in ruling on evidentiary issues, *see Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). As mentioned above, the admission of challenged evidence violates due process "[o]nly if there are *no* permissible inferences the jury may draw from the evidence . . . ." *Jammal*, 926 F.2d at 920 (emphasis in original); *see Zapien v. Davis*, 849 F.3d 787, 794 (9th Cir. 2016) (admission of alleged hearsay did not violate due process).

In the instant case, the jury could draw a "permissible inference[]" from the time-stamped photographs obtained from Wilson's cell phone. *Jammal*, 926 F.2d at 920. As the state appellate court observed, one such photograph depicted petitioner "in a hooded sweatshirt at the scene approximately eight minutes before the incident." *Lopez*, 2020 WL 1452953, at *8. That photograph was relevant to show that petitioner was present around the time of the shooting. Thus, the admission of this relevant evidence could not be considered so prejudicial in the context of the trial as to render the conviction unfair. *See Estelle*, 502 U.S. at 67. Therefore, the state appellate court was reasonable in concluding that the photos were "not hearsay and there was no error in admitting them." *Lopez*, 2020 WL 1452953, at *9.

Nor has petitioner demonstrated that the challenged evidence was manipulated in some way, which he argued in state court to suggest that the evidence lacked foundation, on the ground that the "information for Wilson's cellphone '[could] be manipulated and altered' and "[t]here [was] human interaction and an opportunity for human error during the Cellebrite extraction process." *Id.* But, the state appellate court was reasonable in determining that the record did not support petitioner's argument. *Id.* The state appellate court noted that the officer testified that "when a photo is taken, the phone stamps that photo with the data, including 'the file name, device, and the storage, the Apple phone file it was kept under, the size, and the time when this

24

thing was downloaded.'" *Id.*  Other than changing the time setting on the phone, the officer "did not testify that there was any way to alter or manipulate this information, which was apparently automatically generated." *Id.*  The state appellate court further noted that the officer testified that the photos were extracted from Wilson's phone after he "physically" connected the cord to the phone with no other input or involvement from him or any other person. *Id.*  The state appellate court noted that the officer testified that the data was automatically transferred once he connected the cord to the cell phone. *Id.*  Petitioner has not offered affirmative evidence that the evidence was manipulated, which fails to meet his burden to establish a constitutional violation. *See* ECF No. 1.

Finally, any error was harmless under *Brecht*.  The time-stamped photographs were cumulative of other evidence placing petitioner at the scene of the shooting, including the testimony of six witnesses who said they saw petitioner there, including Guadalupe Vilchis, Antoinette Wilson, Manual Castaneda, Hector De La Cruz, Paula Freehoffer, and Eric Emerson. *See* 2 Reporter's Transcript ("RT") 48-49 (Guadalupe Vilchis), 91-92 (Antoinette Wilson), 142-144 (Manual Castaneda), 163-164 (Hector De La Cruz), 226-240 (Paula Freehoffer), 259-260 (Eric Emerson).  Defense counsel acknowledged this fact in closing.  3RT 430 ("I don't question that he was out there.  But what I do question is whether or not he's the person that actually fired the gun, that did the shooting.").

Based on a review of the record, and applying the legal principles on due process violations, as outlined above, to this claim, the Court finds that the state appellate court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent and was not based on an unreasonable determination of the facts in light of the entire trial record.  Accordingly, petitioner is not entitled to relief on his due process claim, and claim 6a is denied.

      **b.**      **Analysis Related to IAC Claim for Failure to Object to Admission of Time-Stamped Photographs Extracted from Cell Phone (Claim 6b)**

            **1)  State Court Summary Denial**

No state court issued a reasoned decision on petitioner's final claim—that trial counsel was

1    ineffective insofar as counsel's failure to make an objection to the trial court's admission of time-

2    stamped photographs obtained through a cellphone extraction.  The state appellate court

3    acknowledged but did not specifically address petitioner's IAC claim.  *Lopez*, 2020 WL 1452953,

4    at *8 fn. 6.  However, the state appellate court modified the abstract of judgment pursuant to

5    claims not related to his federal claims, denied relief "[i]n all other respects," and affirmed the

6    judgment.  *See Lopez*, 2020 WL 1452953, at *14.

7         "When a state court rejects a federal claim without expressly addressing that claim, a

8    federal habeas court must presume that the federal claim was adjudicated on the merits," and thus

9    the claim must be reviewed deferentially under 28 U.S.C. § 2254(d).  *See Johnson v. Williams*,

10   568 U.S. 289, 301 (2013).  Under these circumstances—where the state court gives no explanation

11   of its decision on a petitioner's federal claim and there is no lower court decision on the claim—a

12   federal court should conduct "an independent review of the record" to determine whether the state

13   court's decision was an objectively unreasonable application of clearly established federal law.

14   *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006).   In conducting this review,

15   the ultimate question is still whether the state court applied federal law in an objectively

16   reasonable manner.  *Kyzar v. Ryan*, 780 F.3d 940, 949 (9th Cir. 2015).  Accordingly, for purposes

17   of AEDPA, this Court decides petitioner's IAC claim by reviewing the summary denial of the

18   claim by the California Supreme Court on July 8, 2020.  Answer, Ex. 8.

19                      **2)  Applicable Federal Law**

20        Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*,

21   466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether

22   counsel's conduct so undermined the proper functioning of the adversarial process that the trial

23   cannot be relied on as having produced a just result."  *Id.* at 686.  In order to prevail on an IAC

24   claim, a petitioner must establish two factors.  First, he must establish that counsel's performance

25   was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing

26   professional norms, *id.* at 687-88, "not whether it deviated from best practices or most common

27   custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690).  "A

28   court considering a claim of ineffective assistance must apply a 'strong presumption' that

United States District Court
Northern District of California

counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, the petitioner must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). It is unnecessary for a federal court considering an IAC claim on habeas review to address the prejudice prong, i.e., the second factor of the *Strickland* test, if the petitioner cannot establish incompetence, as required under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

A lawyer need not file a motion that he knows to be meritless on the facts and the law. Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion. *Juan H.*, 408 F.3d at 1273; *Anderson v. Alameida*, 397 F.3d 1175, 1180-81 (9th Cir. 2005).

### 3) Analysis

Here, petitioner claims that to the extent trial counsel's failure to object to the admission of the time-stamped photographs obtained through a cellphone extraction resulted in the waiver of a claim based on such error, counsel provided ineffective assistance in violation of petitioner's Sixth Amendment rights. For the reasons discussed above, the merits of the underlying due process claim control the resolution of the IAC claim, because even if counsel's failure to object waived the due process claim, no prejudice resulted because the failure to object on meritless grounds is neither unreasonable nor prejudicial. *See Juan H.*, 408 F.3d at 1273. The state appellate court's determination that the time-stamped photographs extracted from the Wilson's phone did not

constitute hearsay under the California Evidence Code, *see Lopez*, 2020 WL 1452953, at *9, is binding on this Court.  Thus, defense counsel was not ineffective for failing to raise that evidentiary objection.  Nor would an objection on due process grounds have succeeded, as the record shows such evidence was relevant and did not render the trial unfair, as explained above. *See supra* DISCUSSION Part III.B.3.a.(3).  Finally, even if counsel had objected and the evidence had been excluded, the record shows that no reasonable probability of a different verdict existed, in light of the other overwhelming evidence demonstrating that six witnesses testified they saw petitioner at the scene of the shooting.  *See* 2RT 48-49, 91-92, 142-144, 163-164, 226-240, 259-260.

Accordingly, the state court's rejection of the IAC claim was not objectively unreasonable. Petitioner is denied habeas relief as to claim 6(b).

## IV.   CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons stated above, the request for an evidentiary hearing is DENIED, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated:  March 13, 2023



_____
JON S. TIGAR
United States District Judge